```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MICHELE FLANAGAN,

                    Plaintiff,            MEMORANDUM & ORDER
                                          11-CV-2682(JS)(GRB)
        -against-

GEICO GENERAL INSURANCE COMPANY,
GEICO CORPORATION, GEICO INDEMNITY
COMPANY, and GEICO CASUALTY COMPANY,

                    Defendants.
----------------------------------------X
```

APPEARANCES
For Plaintiff:      Scott Michael Mishkin, Esq.
                    Kyle T. Pulis, Esq.
                    Scott Michael Mishkin, P.C.
                    One Suffolk Square, Suite 240
                    Islandia, New York 11749

For Defendants:     Barry I. Levy, Esq.
                    Kevin A. Novikoff, Esq.
                    Rivkin Radler LLP
                    926 RXR Plaza
                    Uniondale, New York 11556

                    Bruce S. Harrison, Esq.
                    Elizabeth Torphy-Donzella, Esq.
                    Shaw & Rosenthal, LLP
                    20 So. Charles St., 11th Fl.
                    Baltimore, MD 21201

SEYBERT, District Judge:

Currently pending before the Court is plaintiff Michele Flanagan's ("Plaintiff") motion for reconsideration. (Docket Entry 77.) For the following reasons, Plaintiff's motion is DENIED.

BACKGROUND

The Court presumes familiarity with the factual background of this case, which is set forth in detail in the Court's Memorandum and Order dated March 31, 2015 (the "Summary Judgment Order"). (Docket Entry 75.) Briefly, Plaintiff commenced this employment discrimination action against defendants GEICO General Insurance Company, GEICO Corporation, GEICO Indemnity Company, and GEICO Casualty Company (collectively, "Defendants"), asserting claims of hostile work environment and retaliation pursuant to the New York State Human Rights Law. (Summ. J. Order, at 1.) This action was initially commenced in state court and removed to this Court on the basis of diversity jurisdiction. (Summ. J. Order at 11-12.)

On August 30, 2013, Defendants filed a motion for summary judgment. (Docket Entry 66.) Defendants argued, inter alia, that Plaintiff failed to establish her retaliation claim. (See Def.'s Summ. J. Br., Docket Entry 69, at 5-21.) Plaintiff's claim was based on her contention that GEICO's Regional Vice President, Seth Ingall ("Ingall"), orchestrated her transfer to a different group in retaliation for Plaintiff's complaint about a December 2008 interaction with Ingall. (Summ. J. Order at 16.)

In the Summary Judgment Order, the Court concluded that Plaintiff failed to state a prima facie case for retaliation and granted summary judgment as to Plaintiff's retaliation claim.

(Summ. J. Order at 16-19.)  Particularly, the Court held that Plaintiff could not demonstrate that she engaged in a protected activity when she complained about Ingall because the subject incident was a "brief, non-sexual and isolated act of touching" that could not have led Plaintiff to form a reasonable belief that she was opposing sexual harassment or a hostile work environment by complaining about the incident.  (Summ. J. Order at 18-19.) Additionally, the Court noted that the causal connection between Plaintiff's complaint and her transfer to a new group was "tenuous" based on Plaintiff's admission during her deposition that her belief that Ingall orchestrated her transfer was speculative. (Summ. J. Order at 17-18.)

On April 13, 2015, Plaintiff filed a motion for reconsideration of the Summary Judgment Order's dismissal of her retaliation claim ("Plaintiff's Motion").  (Docket Entry 77.) Plaintiff alleges that the Court failed to consider the reasonableness of Plaintiff's belief that she was opposing sexual harassment by complaining about Ingall "in light of the totality of the circumstances of what plaintiff had been subjected to." (Pl.'s Br., Docket Entry 77-1, at 4.) (internal quotation marks and citations omitted.)  Specifically, Plaintiff argues that since her sexual harassment by Michael Meehan ("Meehan") overlapped with the incidents Plaintiff complained about respecting Ingall,

3

Meehan's conduct should be considered in the context of Plaintiff's retaliation claim. (Pl.'s Br. at 5.)

Plaintiff highlights three incidents involving Ingall where she alleges she was subjected to sexual harassment: (1) In or about December 2008, Seth Ingall . . . "entered plaintiff's cubicle, confronted her very closely, rested his chin on her head, and began breathing heavy and repeating, 'I just want one quote.'" (Pl.'s Br. at 5.) (2) Shortly after the December 2008 incident, while Plaintiff was in an elevator with Ingall and John Pham ("Pham"), the Assistant Vice President of Claims, Pham started muttering "creepy creepy." When Ingall asked Pham what he was saying, Plaintiff responded, "He's calling you creepy. You walked into my cubicle, put your chin on my head and breathed all over me to get me to do a cash for quote. It was plain creepy." (Pl.'s Br. at 5; Summ. J. Order at 8.) (3) In February 2010, Plaintiff and two other female co-workers were on the elevator with Ingall. When Plaintiff and her colleagues missed their floor, one co-worker made a comment to the effect of, "I can go up to your office, there's enough room in there." Ingall replied, "Don't worry. My office is big enough for all four of us." (Pl.'s Br. at 6; Summ. J. Order at 9.)

Plaintiff avers that the Court only considered the first "cubicle" incident in evaluating whether she engaged in protected activity. (Pl.'s Br. at 6.) Plaintiff also argues, without

4

citation to the record, that Ingall "was aware" of Plaintiff's numerous complaints about Meehan and that, accordingly, Ingall "either knew, or should have known, that any questionable conduct or jokes directed toward plaintiff, even if he considered them to be harmless . . . could have been viewed as further harassment in light of everything that plaintiff had been subjected to." (Pl.'s Br. at 6.)

Defendants oppose Plaintiff's Motion and allege that Plaintiff has simply recycled the arguments that were posited in opposition to Defendants' motion for summary judgment. (Defs.' Br., Docket Entry 80, at 4.)

DISCUSSION

I. Legal Standard

Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3. See Wilson v. Pessah, No. 05-CV-3143, 2007 WL 812999, at *2 (E.D.N.Y. Mar. 14, 2007). A motion for reconsideration is appropriate when the moving party believes the Court overlooked important "matters or controlling decisions" that would have influenced the prior decision. Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999). Reconsideration is not a proper tool to repackage and reiterate arguments and issues already considered by the Court in deciding the original motion. See United States v. Gross, No. 98-CR-0159,

2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002). Nor is it proper to raise new arguments and issues. See Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997). Reconsideration may only be granted when the Court did not evaluate decisions or data that might reasonably be expected to alter the conclusion reached by the Court. Wechsler v. Hunt Health Sys., 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002).

II. Analysis

Plaintiff does not appear to dispute that the controlling framework for analyzing a retaliation claim under the New York State Human Rights Law requires a plaintiff to establish that: "'(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013) (quoting Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006)). Indeed, Plaintiff does not allege that the Court overlooked any controlling law. Instead, Plaintiff argues that reconsideration is warranted based on: (a) the Court's alleged failure to consider all three incidents involving Ingall, and (b) the Court's alleged failure to analyze Plaintiff's retaliation claim in light of the "totality of the circumstances";

specifically, the alleged hostile environment created by Meehan's sexual harassment. (See generally Pl.'s Br.) The Court disagrees.

First, the three incidents cited by Plaintiff and the "totality of circumstances" respecting Meehan's sexual harassment have no bearing on the Court's finding that the causal connection between Plaintiff's complaint about Ingall and her transfer to a new group is "tenuous" in light of Plaintiff's admission that her belief that Ingall orchestrated her transfer "was based solely on her own speculation." (Summ. J. Order at 17.)

Second, Plaintiff's alleged years of sexual harassment by Meehan does not create a reasonable belief that Plaintiff was opposing sexual harassment or a hostile work environment by complaining about a "brief, non-sexual and isolated act of touching" by Ingall that she characterized as "creepy". See, e.g., Bowen-Hooks v. City of N.Y., 13 F. Supp. 3d 179, 224 (E.D.N.Y. 2014) ("Absent any express statements indicating that [plaintiff] was protesting the order because it was discriminatory based on her race or gender, [p]laintiff's actions . . . could not have put [d]efendants on notice that she felt the order to be discriminatory, and her protest is therefore not protected by the antiretaliation protections of Title VII, the NYSHRL and § 1981.")

Moreover, the subsequent incidents with Ingall in the elevator do not establish a causal connection between the complaint and the transfer, nor do they support the notion that Plaintiff

7

was engaging in a protected activity by complaining about Ingall. In fact, the February 2010 elevator incident where Ingall commented that his office was "big enough for all four of us" occurred after Plaintiff's transfer to the new group in approximately May 2009. (Summ. J. Order at 8-9.)

Third, Plaintiff discussed the three Ingall incidents in her opposition to Defendants' motion for summary judgment and expressly argued that "defendants overlook the fact that plaintiff had engaged in protected activity on multiple occasions when she complained about Meehan's conduct in the past . . . her complaints regarding the Ingall incidents were protected activity, as plaintiff had a good faith reasonable belief that she was being subjected to further harassment." (Pl.'s Summ. J. Br., Docket Entry 71, at 17.) Thus, Plaintiff's motion is merely a relitigation of points already raised in the underlying motion sequence. See Gross, 2002 WL 32096592, at *4 ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously.").

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reconsider the Summary Judgment Order is DENIED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED: November  16 , 2015
Central Islip, New York